# O'Neal *against* O'Neal.

There can be but one final judgment in any personal action, whether founded in contract or in tort.

In a joint action against two where one pleads to issue, and judgment by default is rendered against the other, for want of appearance and plea, the judgment is interlocutory; and the damages are assessed by the subsequent trial of the issue.

In an action upon an insolvent bond the judgment is not for the penalty of the bond, but for the damages under it for breaches incurred at the suing out of the writ.

**ERROR** to the District Court of *Allegheny* county.

Edward O'Neal against Daniel O'Neal and Edward Faber. This was an action of debt upon an insolvent bond, in which the breach assigned was that the said Daniel O'Neal did not appear to take the benefit of the insolvent laws, in pursuance of the terms of his bond. A judgment was rendered by default against Daniel O'Neal for want of an appearance and plea for $910; being the amount of the penalty of the bond. Faber pleaded to issue, and upon the trial of the cause a verdict and judgment were rendered against him for $910.

*Dunlop*, for plaintiff in error, argued that the first judgment

[O'Neal v. O'Neal.]

merged the debt, and there could be no further proceeding against the other defendant.    But at all events the judgment by default for a certain sum was erroneous; it was but an interlocutory judgment; and the jury should have been sworn *tam ad triandum quam ad inquirendum* as to the other defendant; or there should have been a special venire.    2 *Serg. & Rawle* 280; 5 *Watts* 332; 17 *Serg. & Rawle* 447; 9 *Watts* 24; 1 *Watts* 378; 2 *Serg. & Rawle* 242; 2 *Watts* 231; 1 *Saund.* 58, *n.* 1; 1 *Tidd's Prac.* 512; 3 *Chit. Pl.* 219; 2 *Arch. Prac.* 9, 10, 21; 10 *Watts* 396; 13 *Serg. & Rawle* 452; 9 *Watts* 47; 2 *Bos. & Pul.* 496; 3 *Maul. & Sel.* 155; 14 *East* 442.

*Findlay, contra.*  The judgments are at the same time, and therefore form but one.    If the debt was merged in the judgment by default, it should have been pleaded.    There is nothing on the record to show that we were not entitled to recover the whole amount of $910.    10 *Watts* 396.

The opinion of the Court was delivered by

Gibson, C. J.—It was shown, in *Williams* v. *M'Fall*, that there cannot be two final judgments in debt, for the reason that, as the contract is entire, and each of the defendants is entitled to the benefit of his co-defendant's plea, the plaintiff must succeed against all or none: to which may be added, that there can be but one final judgment in any personal action, whether founded in contract or in tort, because the simplicity of the common law tolerates no incongruity in its forms, but requires that all the entries on the record of an action present a faithful picture of the proceedings as correspondent parts of a consistent whole.    Even the fictitious machinery of an ejectment, or a common recovery, was constructed on the principles of an artificial but harmonious system.    But the symmetry of legal proceedings has yielded in England to legislative measures of convenience; and, in our own state, much more so to similar measures in co-operation with the inattention to things of subordinate importance so remarkably evinced by the profession, yet not so far as to admit of distinct judgments of the same stamp in the same action.    Was then this judgment by default final or interlocutory?    Judgment in debt, is usually, but not always, final; for, as was held in *Arden* v. *Connel*, (1 *Dowl. & Ryl.* 529), when it is for use and occupation, or for foreign money, or for not setting out tithes, an inquisition is necessary to ascertain the rent, or the value of the foreign money, or of the tithes; and it seems to be the practice to award an inquest to ascertain all beyond ordinary damages which may be computed by the prothonotary, to say nothing of the 8 and 9 *W.* 3, which directs an inquest to assess damages for the breach of any *covenant* in an indenture or a deed.    That statute has been held not to extend to a bail bond, a replevin bond, a petitioning creditor's bond, or a common money

bond; for all which, summary or equitable relief is provided by particular statutes; but it might be affirmed that it extends to every forfeiture of a penalty by the breach of a covenant where specific relief is not otherwise provided. The judgment by default, proper for the occasion, therefore, was an interlocutory one, " that the plaintiff OUGHT to recover his *damages* against the defendant on occasion of the premises," accompanied by an award of a special venire *tam ad triandum quam ad inquirendum,* according to the precedents in *Goram* v. *Sweeting,* (2 *Saund.* 205); *Chandler* v. *Vilett,* (*id.* 119); and *Pinckney* v. *De Rotel',* (*id.* 378). Damages are recoverable in every personal action, but they are usually nominal in debt by the common law; yet to these are to be added, under the statute of William and our own act presently to be noticed, substantial compensation for breaches of an agreement which have accrued at the impetration of the writ. Here, however, the judgment by default is not in an interlocutory form, but for a definite amount, and the difficulty is to avoid the legal effect of the entry by distinguishing the case from *Williams* v. *M'Fall.* Our practice is to sign judgment by writing the words as a memorandum to make up the record; and till that is done, it stands, in contemplation of law, for the form of a judgment proper for the occasion. What we have to do, therefore, is to get rid of the sum added to the entry by inadvertence; and as the court below would have ordered it to be struck out, we may treat it as a nullity. In *Hussey* v. *White,* (10 *Serg. & Rawle* 346), we held, somewhat on the same principle, that an administrator's confession of judgment *de bonis,* was not a confession of assets: at least we avoided the legal effect of the entry in order to execute the manifest intent of it. The judgment for want of a plea, therefore, was essentially an interlocutory one; and what was the next step to be taken in regard to the issue joined by the defendant who pleaded? It is not our practice to award a venire *tam ad triandum quam ad inquirendum;* but the jury is supposed to have been sworn as if the writ were in that form. The supposition, however, is necessarily a fiction; for the oath prescribed by the legislature, indifferently for all cases, is no more than to try the issue joined; and the defendant who has let judgment go by default, is no party to it: as to him, there is no issue. Disregarding, then, the form of the oath, we have no choice but to take the damages assessed at the trial of the issue, to be the amount for which each is liable, and to give final judgment against them jointly. There is no other means to surmount the obstacles put in the way of justice by the looseness of our practice and the improvidence of the legislature. It would be useless to sanction a departure from the strictness of common law forms, did we stop short of the mark; and, to prevent the most flagrant abuse of their technical effect, we are sometimes compelled to twist and distort them in a surprising manner. What we have to do, then, is to preserve them as far as we can, holding fast to

[O'Neal v. O'Neal.]

the substance of justice. Had the jury, who tried the issue in this case, assessed special damages, there would have been a foundation for a final judgment against him who had been defaulted as well as him who had pleaded; but the verdict was only for the penalty by direction of the judge, it is said, because our statute of 1836, relating to penal bonds, directs the judgment to be for the penalty; but the statute of William, of which ours is scarce more than a paraphrase, directs the same thing, and yet the jury assess damages under it for breaches incurred at the suing out of the writ. The principal, if not the only modification of its substance, is our legislative extension of its relief to bonds for the performance of written, but unsealed, agreements, and a substitution of the *scire facias* for a suggestion of subsequent breaches. Why then should we not follow the practice under it? There is no room under our own for the *quantum damnificatus* of a chancellor, nor have we a chancellor to award it. Beside, there is neither a provision, nor a necessity, for a *scire facias* to recover damages incurred at the commencement of the action. The execution, following the judgment, is nominally for the penalty, but actually for the damages which are endorsed on it, with a direction to levy no more, but to release the penalty on payment of them. Such is the simple and intelligible practice which has prevailed under the statute of William, and such it should be under our own, which gives the *scire facias* expressly for prospective breaches. Whatever, then, may have led to the verdict as it stands upon the record, it is enough for the occasion, that it is not a foundation for the judgment.

Judgment reversed, and *venire de novo* awarded.